J-S38010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PERRY HENDERSON | : | |
| | : | |
| Appellant | : | No. 728 WDA 2017 |

Appeal from the Judgment of Sentence May 1, 2017
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0001879-2015

BEFORE:   BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 28, 2018**

Perry Henderson appeals from the judgment of sentence of life imprisonment without possibility of parole imposed after a jury found him guilty of second-degree murder and other crimes in connection with the shooting death of Thomas Peebles.  We affirm.

The facts and history of the case are as follows.  On July 17, 2015, Appellant, along with Stanley Spriggs and Kenneth Simmons, went to Johnstown in order to "hit a lick," *i.e.* to rob somebody.  N.T. Trial, 2/17/17, at 117.  Spriggs, the driver, saw an acquaintance, Robert Hinton, at a Sheetz convenience store.  Spriggs called to Mr. Hinton, who walked over to the vehicle.  Mr. Hinton testified that he recognized Spriggs, whom he knew from six or seven years ago as Jamil.  The two engaged in small talk, and Spriggs eventually asked Mr. Hinton where he could buy heroin.  Mr. Hinton, who was a drug addict at the time, stated that he was uncomfortable with the request

_____
\*   Retired Senior Judge assigned to the Superior Court.

and merely pretended to send a text message seeking the information. However, Mr. Hinton's girlfriend, Kala Ceryak, volunteered that she could help arrange the purchase. She texted Mr. Peebles, whom Mr. Hinton described as his occasional dealer.

Appellant, Simmons, Spriggs, and Mr. Hinton, with Spriggs driving, proceeded to the Solomon Homes public housing complex where Mr. Peebles was waiting with three bricks of heroin. The negotiated price was $280 per brick. Mr. Hinton spoke to Mr. Peebles on the phone and arranged the sale, which took place inside a stairwell. Since Mr. Peebles did not know any of the three defendants, Mr. Hinton acted as an intermediary. Mr. Hinton asked who would be bringing the money for the deal, and Appellant and Simmons exited the vehicle. Spriggs remained in the vehicle, a four-door, green Ford Escort sedan. Mr. Hinton felt that something was not right, as the three defendants refused to show Mr. Hinton that they had enough money to complete the transaction.

Mr. Hinton, Mr. Peebles, Appellant, and Simmons walked up the interior stairwell of Building 5 of the complex. Mr. Hinton testified that shortly after Mr. Peebles showed the heroin, Mr. Hinton felt Simmons place a gun against the back of his head. He also saw Appellant holding a gun to Mr. Peebles's chest. Fearing for his life, Mr. Hinton ran further up the steps. He heard a scuffle, followed by a gunshot. Video surveillance from inside the stairwell was played at trial, and showed Mr. Peebles, Simmons, and Appellant

struggling.[1]  Although firearms are visible in the video, the actual shooting is not captured on camera, as the parties had fallen to the ground outside of the camera's view.  Appellant and Simmons fled, taking the heroin with them.  Mr. Hinton came back down the steps shortly thereafter and called 911.

Johnstown police arrived at the scene and found Mr. Peebles in a pool of blood with a gun in his hand.  He was taken to the hospital, where he died from a gunshot wound to the head.  Hospital workers collected a rubber-banded bundle of $472 in cash from Mr. Peebles's pocket.  Four hundred dollars was folded in four thin groups of $100; the remaining $72 was in a thicker fold of varying denominations.

Meanwhile back at Solomon Homes, based upon information obtained from Mr. Hinton and others, the police issued a BOLO for three black males in a dark green four-door sedan heading toward Altoona.  Responding to the alert, Cresson Township police positioned themselves along the main road to Altoona and stopped the vehicle when it drove by.  Appellant had approximately ninety bags of heroin in his pocket when he was arrested.  After the car was towed to Johnstown and a warrant was secured, the vehicle was searched and, *inter alia*, two loaded firearms were recovered.  Later ballistics

---

[1] There were also video cameras outside of the building, and one officer viewed footage showing three unidentifiable men approaching Building 5 shortly after 2:00 am.  However, the footage was written-over and unavailable for trial.

testing showed one of the guns to be the murder weapon; testing of the other weapon revealed evidence of Spriggs's DNA.

Appellant, Simmons, and Spriggs were charged with various crimes related to the death of Mr. Peebles. Appellant elected to represent himself, and standby counsel was appointed. Simmons, after giving differing statements to police about the events in question, including one in which Appellant acted in self-defense, ultimately entered a guilty plea to third-degree murder in exchange for his testimony against the alleged-co-conspirators. Appellant and Spriggs were tried jointly after their motions to sever were denied. At trial, Simmons testified that all three men agreed to commit the robbery and that he witnessed Appellant shoot Mr. Peebles. Appellant proceeded upon a self-defense theory, but, after asking that stand-by counsel take over the defense, Appellant decided, against counsel's advice, not to testify.

Appellant was convicted of second-degree murder, aggravated assault, robbery, conspiracy, possession of a controlled substance with intent to deliver, and simple possession, and was sentenced to an aggregate term of life imprisonment without possibility of parole. Appellant filed a notice of

appeal, and complied with the order to file a Pa.R.A.P. 1925(b) statement.

Appellant now raises twelve[2] allegations of trial court error.

> 1. Did the trial court commit reversible error when it granted the Commonwealth's request to consolidate the trials of [Appellant] and . . . Spriggs?
>
> 2. [Appellant] avers that the trial judge committed reversible error by not continuing the trial to give [Appellant] additional time to prepare for trial based in part on his *pro se* status at the time, and his need for additional "Law Library Time" in the Cambria County Prison to better prepare for the trial. [Appellant] avers that in spite of various court orders authorizing him time, he was denied adequate time in the prison law library by prison officials. [Appellant] further avers that the time allocated by the court was insufficient.
>
> 3. [Appellant] avers that the trial judge erred in allowing [Appellant] to represent himself in such a serious criminal matter; while it is readily acknowledged that stand-by counsel was appointed, same was not sufficient for [Appellant] to adequately respond to split[-]second decisions that were thrust upon him at the various stages of the proceedings.
>
> 4. [Appellant] avers that the trial court erred in allowing testimony to be presented regarding the outside surveillance camera footage at the scene when the Commonwealth failed to adequately preserve said video, and as such failed to provide a copy of said video footage to [Appellant].

_____

[2] Appellant lists an additional five questions in his statement of questions involved, **see** Appellant's brief at 8-9; however, he does not mention them in the argument section of his brief, let alone support those claims with any argument or citation to authority. Accordingly, those claims are waived. **See Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

5.  [Appellant] avers that the trial judge committed reversible error when he allowed evidence . . . regarding the plea of . . . Simmons to be introduced to the jury by the Commonwealth. Said plea to third[-]degree murder had no probative value and was extremely and unfairly prejudicial to [Appellant]. In part, the jury, after having heard of the deal would have concluded, and did in fact conclude that [Appellant] must be guilty of a more serious crime since a co-defendant already pled to third[-]degree murder.

6.  [Appellant] avers that the trial judge committed reversible error in denying his suppression motion premised upon an illegal stop of his motor vehicle in Cresson Township.

7.  [Appellant] avers that the trial judge committed reversible error by not granting his motion to [find] him not guilty of all of the drug[-]related offenses, as they were filed by the Johnstown Police Department[,] yet it was averred that said drugs and associated paraphernalia were located in Cresson Township. As such, the Johnstown Police Department was without the requisite jurisdiction to file and prosecute said charges.

8.  [Appellant] avers that the trial judge committed reversible error in denying his request for a videographer where [Appellant's] well[-]reason[ed] purpose for same was presented to the trial judge.

9.  [Appellant] avers that the trial judge committed reversible error in denying his request for a DNA expert where [Appellant's] well[-]reason[ed] purpose for same was presented to the trial judge.

10.  [Appellant] avers that the trial judge committed reversible error in denying his request for a ballistics expert where [Appellant's] well[-]reason[ed] purpose for same was presented to the trial judge.

11.  [Appellant] avers that the trial judge committed reversible error in denying his request for a fingerprint expert where [Appellant's] well[-]reason[ed] purpose for same was presented to the trial judge.

12. [Appellant] avers that the trial judge committed reversible error in denying his request for a crime scene re-constructionist where [Appellant's] well[-]reason[ed] purpose for same was presented to the trial judge.

Appellant's brief at 6-7 (unnecessary capitalization omitted).[3]

Appellant first contends that he should not have been tried with Spriggs. Appellant's brief at 11. He claims that he was "forced to alter his trial strategy and was unable to advocate and solicit facts in the same manner" as he otherwise would have. *Id*. at 13. Appellant avers that evidence of Spriggs's DNA found on one of the firearms recovered from the vehicle was irrelevant and inadmissible against Appellant, and was prejudicially used by the jury to convict Appellant. *Id*.

---

[3] The trial court and the Commonwealth both invoked the oft-quoted wisdom of the late Honorable Ruggero Aldisert:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them . . . [and] it is [this] presumption . . . that reduces the effectiveness of appellate advocacy.

*Commonwealth v. Robinson*, 864 A.2d 460, 480, n.28 (Pa. 2004) (quoting Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982) (emphasis in original)). We agree that the criticism applies in the instant appeal, although we shall thoroughly address each of the prolix claims Appellant has raised and developed.

We begin our consideration of the claim with a review of the applicable law. Rule 582 of the Rules of Criminal Procedure provides in relevant part: "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). It is well-established that "there is a universal preference for a joint trial of co-conspirators." *Commonwealth v. Cole*, 167 A.3d 49, 57 (Pa.Super. 2017).

However, the Rules also provide that a court may order separate trials "if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. The party seeking severance must establish prejudice by presenting "more than a mere assertion of antagonism." *Cole*, *supra* at 57 (internal quotation marks omitted). "We consider the decision of whether to deny a motion to sever under an abuse of discretion standard." *Commonwealth v. O'Neil*, 108 A.3d 900, 905 (Pa.Super. 2015).

Herein, Appellant and Spriggs were charged as co-conspirators, and therefore joint trials were favored from the outset. Appellant and Spriggs's defenses were not conflicting, since both men maintained that there was no conspiracy to rob Mr. Peebles. Appellant's defense was that he shot Mr. Peebles in self-defense after the deal went wrong, while Spriggs asserted that he remained in the vehicle while the planned drug deal occurred. Given that Appellant acknowledged shooting Mr. Peebles, the allegation that he was

somehow prejudiced by the DNA evidence against Spriggs is specious. Further, Appellant offers no explanation of how his defense strategy would have differed had he been tried separately. Accordingly, the trial court's determination to try Appellant and Spriggs together was entirely proper. **See**, **e.g**., **Commonwealth v. Housman**, 986 A.2d 822, 834-35 (Pa. 2009) (holding trial court did not abuse its discretion in failing to sever trials, although the co-conspirator's defense of duress was supported by evidence that would have been inadmissible against the appellant in a separate trial, where any prejudice was eclipsed by the appellant's admission that he strangled the victim to death). No relief is due.

Appellant's next claim is that the trial court erred in not giving him more time to prepare for trial. He argues that "as a *pro se* litigant, he needed additional time to prepare for trial, to review discovery, and to perform additional research in his limited afforded time at the jail library." Appellant's brief at 15. Again, we begin our consideration of Appellant's issue with a review of the applicable legal principles.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. Moreover, a bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. An appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will

not reverse a denial of a motion for continuance in the absence of prejudice.

***Commonwealth v. Antidormi***, 84 A.3d 736, 745-46 (Pa.Super. 2014)

(cleaned up).

The trial court addressed Appellant's claims as follows.

Following an extensive oral colloquy, as supplemented by a written colloquy, [Appellant] was granted *pro se* status by th[e] court on June 10, 2016. Stand-by counsel was also appointed for [Appellant]. Thereafter, cognizant of [Appellant's] *pro se* representation, [the trial court] generated several [o]rders to accommodate [Appellant's] various requests for additional law library time. In fact, [Appellant] commenced a *pro se* action in mandamus against the Cambria County Prison, wherein he alleged the denial of law library time by prison officials. [The trial court] gave [Appellant] great leeway in proceeding in mandamus, and at [a] hearing it became apparent that [Appellant] had not completed the prison's necessary paperwork to be afforded any, let alone extra, law library time, and [the court] crafted an order clarifying both [Appellant's] and the prison's obligations relative to [Appellant's] law library usage. Thereafter, [Appellant] [sought] additional mandamus proceedings, which [the court] timely scheduled for hearing. Additionally, the prison continued to keep the court abreast of various instances when [Appellant] was placed in disciplinary housing for behavioral issues and, consequently, due to institutional policy, was not permitted law library time. Likewise, the prison informed the court as to when [Appellant] was granted law library access despite his disciplinary housing.

. . . .

As to [Appellant's] contention that [the trial court] neglected to continue his trial, [the court] believe[s] that the record speaks quite to the contrary. In fact, both the May 16, 2016 jury selection and the August 15, 2016 jury selection dates were continued at the request of the defense. Additionally, the Commonwealth's request to continue the subsequent November 1, 2016 jury selection date was also granted. Jury selection ultimately commenced on February 13, 2017. Thus, over a year and a half elapsed between the commission of the alleged offenses on July

- 10 -

19, 2015[,] and jury selection. Moreover, throughout said timeframe, [the trial court] maintained a regimented pre-trial schedule to ensure timely exchange of discovery, prompt disposition of motions and suppression issues, and comprehensive jury management. To the extent that [Appellant] asserts that his trial preparation was jeopardized, it could only have come by his own hand.

Trial Court Opinion, 7/28/17, at 5-6 (citations and unnecessary capitalization omitted).

The record supports the trial court's assertions. As such, Appellant's contentions are either belied by the record or supported by the mere bald assertions of prejudice that are insufficient to warrant reversal. *Cf.* ***Commonwealth v. Ross***, 57 A.3d 85, 88 (Pa.Super. 2012) (holding trial court abused its discretion in not granting continuance where the appellant's attorney entered his appearance two weeks before jury selection, made repeated motions for a continuance with specifics as to his inability to prepare the defense, and prejudice was established by his being forced to open and cross-examine the Commonwealth's expert witnesses without yet knowing the opinions of his own experts). Appellant's second issue merits no relief.

Next, Appellant avers that the trial court erred in allowing him to proceed *pro se*. He claims that he was not able "to adequately respond to split[-]second decisions that were thrust upon him" in representing himself in "such a serious criminal matter," even with the help of standby counsel. Appellant's brief at 15.

A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's

- 11 -

assistance and proceed to represent oneself at criminal proceedings. The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court . . . must allow the individual to proceed *pro se*.

*Commonwealth v. El*, 977 A.2d 1158, 1162-63 (Pa. 2009) (citations and footnotes omitted). Rule 121 provides that, to ensure the defendant makes a valid waiver of the right to counsel, the trial court must elicit from the defendant, at a minimum, that he understands: his right to counsel at no cost if he is indigent, the nature of the charges against him, the permissible ranges of sentences, that he will be bound by the same rules as attorneys if he represents himself, that counsel may know of defenses and other rights that the defendant does not know that may be lost if not timely raised. Pa.R.Crim.P. 121(A)(2).

Appellant does not allege that the trial court failed to make the requisite inquiries under Rule 121, and our review of the record confirms that the colloquy was proper. *See* N.T. Motions Hearing, 6/10/16, at 3-13; *see also* Waiver of Counsel, 6/10/16. Rather, Appellant contends that "it was apparent throughout the pretrial and trial process that [Appellant] was not capable of making well[-]thought[-]out arguments or following up on objections that were suggested by [standby] counsel." Appellant's brief at 15. Further, Appellant notes that he "remained silent at times, even when counsel for his co-defendant objected to meritorious issues." *Id*. at 16. Hence, Appellant is

suggesting that the trial court should have rejected Appellant's assertion of his right to represent himself because it should have been clear to the court that Appellant did not know what he was doing.

As our Supreme Court made clear in **Commonwealth v. Starr**, 664 A.2d 1326 (Pa. 1995), such interference is not permissible.

> [A] consideration of the defendant's best interests (*i.e.*, that the defendant would be subject to less risk of conviction and/or consequently more severe punishment if represented by competent counsel) is wholly irrelevant to an assessment of whether a criminal defendant has rendered a knowing and intelligent waiver of his right to the assistance of counsel or not. When a trial court reaches out in an effort to protect what it considers to be a criminal defendant's best interests and in so doing fundamentally denies that defendant's constitutional right to self-representation, that defendant's constitutional right to *pro se* representation is rendered, at best, illusory[.]
>
> . . . .
>
> Our trial courts are constrained to abide by a collective view of justice as expressed in our state constitution and in the federal constitution and in the opinions of this Court and of the United States Supreme Court. That collective view of justice includes the notion that although a defendant may conduct his own defense ultimately to his own detriment, his choice [of self-representation] must be honored out of that respect for the individual which is the lifeblood of the law. In short, our trial courts are not free to insist upon their own conception and expression of what the law should be at the expense of denying a criminal defendant's assertion of a vital constitutional right merely because the trial court thinks it knows what is best for the defendant. . . .
>
> Furthermore, an evaluation of a criminal defendant's technical legal knowledge and courtroom skill is not relevant to an assessment of his knowing and intelligent exercise of the right to defend himself. This approach, like the best interests approach, represents the kind of paternalistic concern for a criminal defendant expressly rejected [by the United States Supreme Court].

- 13 -

*Id*. at 1336-37 (citations and internal quotation marks omitted).

Therefore, because Appellant made a constitutionally-valid waiver of his right to counsel, the trial court was powerless to foist counsel upon him on the basis of Appellant's best interests or lack of familiarity with the law. Appellant made his choice fully apprised that he would be held to the same standards as an attorney, and he was not entitled to change his mind after he realized how unwise his decision was.[4] The trial court committed no error regarding Appellant's representation.

In his next argument, Appellant suggests that the trial court violated the best evidence rule by allowing Detective Gregory Lamantia to testify about his observations of video footage taken from outdoor surveillance cameras at the Solomon Homes complex. Appellant's brief at 16. By way of background, Detective Lamantia testified, over Appellant's objection, from notes he made while viewing footage from exterior cameras at Solomon Homes. Detective Lamantia took notes on what he saw, but the videos were never copied and thus were not provided in discovery. The testimony established that a car was on scene at 2:04 a.m., and left the parking lot shortly thereafter. Detective

_____

[4] Our review of the transcript reveals that Appellant was undoubtedly competent to make his decision, and actually did a fair job of representing himself, given his lack of legal training. He raised proper objections that were sustained, joined in objections raised by Spriggs's counsel, and, in his wisest decision at trial, opted to step back and allow standby counsel to assume his defense before trial concluded.

Lamantia indicated that the video showed three individuals walking from the car towards Building 5, but he could not identify any of them from the grainy footage. *See* N.T. Trial, 2/24/17, at 133-36.

Appellant maintains that the Commonwealth was required to produce the video recording itself, and was not permitted to instead offer Detective Lamantia's testimony about what he saw on the video footage. Appellant's brief at 17. Appellant further contends "that the Commonwealth's explanation for what happened to the video simply does not make sense."[5] *Id*.

The best evidence rule is codified in Pa.R.E. 1002, which provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Once such other rule specifies that an original is not required, and other evidence of the contents of the writing or recording is admissible, if, *inter alia*, "the writing, recording, or photograph is not closely related to a controlling issue." Pa.R.E. 1004(a), (d).

"Traditionally, Pennsylvania courts applied the 'best evidence' rule when the content of documentary evidence was at issue; that is, when the **terms of the writing had to be proved** to make a case or provide a defense." ***Commonwealth v. Dent***, 837 A.2d 571, 589 (Pa.Super. 2003) (emphasis

---

[5] Although Detective Lamantia indicated that he informed others in the department that the footage existed, the video was not copied or otherwise preserved before the video was written-over per the normal functioning of the surveillance system.

added). This is reflected in subsection (d). As this Court explained, "The rule is not implicated just because evidence is relevant; the rule applies if the writing, recording, or photograph is necessary to prove the elements of a case." *Commonwealth v. Green*, 162 A.3d 509, 518 (Pa.Super. 2017) (*en banc*) (internal quotation marks omitted); *see also Dent*, *supra* at 590 ("If the Commonwealth does not need to prove the contents of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording."). Violation of the best evidence rule does not warrant reversal if the error was harmless. *Green*, *supra* at 519.

Here, the Commonwealth did not need to prove the contents of any of the surveillance recordings to establish that Appellant and his co-conspirators assaulted, robbed, and murdered Mr. Peebles, or possessed controlled substances. The footage, as described by Detective Lamantia, was relevant, as it corroborated the testimony of Simmons and Mr. Hinton, but it was not necessary to prove any element of the crimes. For that reason alone, we conclude that the trial court did not abuse its discretion in allowing Officer Lamantia to testify to his observations of the footage.[6] *See*, *e.g.*, *Commonwealth v. Fisher*, 764 A.2d 82, 89 (Pa.Super. 2000) ("[S]ince the tape recordings of Appellant's phone messages did not provide evidence which

---

[6] *See Commonwealth v. Kemp*, 961 A.2d 1247, 1254 n.3 (Pa.Super. 2008) (*en banc*) ("[W]e can affirm the trial court on any valid basis.").

established the fundamental components of any of these offenses, the Commonwealth was not required to introduce the original recordings from the voice mail system under Pa.R.E. 1002.").

Moreover, it is also clear that, even if the admission of the testimony was in error, it was harmless. The detective's testimony that the footage showed three unidentifiable men walking toward Building 5 surely did not contribute to the verdict here, given that the properly-admitted footage showing Appellant and the other two men inside Building 5 immediately thereafter and that Appellant did not contest that he was there. No relief is due.

Appellant's next claim of error concerns the trial court's allowance of the jury to learn the terms of Simmons's guilty plea to third-degree murder. Simmons's testimony concerning his plea agreement was as follows.

Q.    Did you take a plea in this case?

A.    Yes.

Q.    Can you tell the jury what you pled to?

A.    Third[-]degree murder, 11 to 25 years.

Q.    Now you have not been sentenced yet, have you?

A.    No.

Q.    And that 11 to 25 years, that is not a guarantee is it?

A.    No.

Q.    That is a suggestion by the District Attorney's office?

A.     Yes.

N.T. Trial, 2/17/17, at 114-15.

Appellant acknowledges that defendants often seek to introduce the terms of witnesses' favorable plea agreements to show motivation to lie. Appellant's brief at 19.  However, Appellant contends that he did not wish to reveal the terms of Simmons's plea because Simmons "did not get a favorable plea and sentence."  **Id**.  Appellant suggests that Simmons's  "involvement was so minimal, that he very well may have been acquitted of all charges had he [gone] to trial."  **Id**.  Appellant argues that the jury, erroneously thinking that Simmons's proposed eleven-to-twenty-five-year sentence was a good bargain, would necessarily conclude that Appellant and Spriggs "must be guilty of the more serious crime, [second-]degree murder."  **Id**.

The trial court addressed Appellant's contentions as follows.

> Our appellate courts have consistently noted the propriety of the Commonwealth's disclosure to the jury of a testifying co-defendant's favorable plea bargain and/or sentencing agreement. **See**, [**e.g.**], [**Commonwealth**] **v. Lam**, 684 A.2d 153[, 159-60] (Pa.Super. 1996) (prosecutor's questioning of prosecution witness to establish parameter[s] of witness'[s] plea, including requirement that he testify truthfully, and to reveal sentence that witness would be given in exchange for his testimony was not improper bolstering of witness'[s] credibility, where there was no attempt made to establish or imply to the jury that the witness was giving up his right to remain silent in order to testify against defendant or to raise negative inference based upon defendant's failure to testify), *citing* [**Commonwealth**] **v. Bricker**, 581 A.2d 147, [155] (Pa. 1990) (Commonwealth can appropriately reveal the existence and parameters of a plea agreement through the testimony of the witness who entered said agreement), and [**Commonwealth**] **v. Sattazahn**, 631 A.2d 597, 612 (Pa.Super. 1993) (where co-conspirator pled guilty to a lesser charge in

- 18 -

exchange for his testimony as chief prosecution witness, Commonwealth could properly question the witness as to the parameters of the agreement, including the provision to testify honestly and truthfully).

. . . .

Overall, the Commonwealth only elicited very basic information from Mr. Simmons about his plea deal, and unlike the aforementioned authority, did not even question Mr. Simmons as to any obligations to be truthful and honest. Additionally, despite [Appellant's] objection, said testimony was highly relevant to illuminating Mr. Simmons'[s] bias/motive in testifying. Finally, [the trial court] instructed the jury that it was to consider Mr. Simmons'[s], and all witnesses' bias/motive in examining credibility. Therefore, . . . [Appellant's] fifth issue is meritless.

Trial Court Opinion, 6/28/17, at 11-12. We agree.

Furthermore, we note that Simmons's involvement was not minimal. As discussed above, the evidence showed that Simmons accompanied Appellant into the building, held a gun to Mr. Hinton's head while Appellant robbed Mr. Peebles, and retrieved the heroin that Mr. Peebles dropped as he and Appellant struggled. If any of the conspirators' involvement could be construed as minimal it would be that of Spriggs, who remained in the car during the murder but who, by virtue of the conspiracy, was properly sentenced on his second-degree murder conviction to life imprisonment without possibility of parole. Simmons's plea agreement achieved a far more favorable result for him. Accordingly, the trial court did not abuse its discretion in allowing the Commonwealth to question Simmons about the parameters of his plea agreement.

Appellant's next issue contests the trial court's denial of his pretrial omnibus motion seeking to suppress physical evidence. We apply the following principles.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa.Super. 2017) (citations omitted).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Carper*, 172 A.3d 613, 616-17 (Pa.Super. 2017). Appellant contends that the trial court erred by improperly shifting the burden to him. He argues as follows:

> [Appellant] filed a motion to suppress the evidence that was obtained from the vehicle that he was driving.[7] The initial hearing was continued (wherein officer Paul Mummert was present

---

[7] There is no indication in the record that Appellant was the driver of the vehicle. Rather, the testimony indicated that Spriggs was driving when the car was stopped. *See* N.T. Preliminary Hearing, 9/23/15, at 16 (incorporated in suppression hearing as Commonwealth's Exhibit 1).

at the initial hearing); at the rescheduled hearing, which was held on July 28, 2016, [Appellant] acting *pro se* called Officer . . . Mummert to the stand. The assistant district attorney advised the court that he wasn't present and that he did not believe that the defense had subpoenaed him to be present. The trial judge then advised [Appellant] that he should have subpoenaed [Officer] Mummert to be present. As a result, no questions were asked of [Officer] Mummert (as he was not present), and the suppression motion was ultimately dismissed. The key here is that the trial judge **mistakenly shifted the burden** to prove that the evidence was not illegally seized onto [Appellant].

Appellant's brief at 21 (citations omitted, emphasis in original).

Appellant's argument is contrary to the record. Appellant filed his amended omnibus pretrial motion on June 22, 2016, moving, *inter alia*, to suppress "Any evidence obtained from the illegal stop of the vehicle." Amended Omnibus Pretrial Motion, 6/22/16, at 2. The trial court held a hearing on the motion, as well as Spriggs's pretrial motions, on July 28, 2016.

At the hearing, the Commonwealth offered the testimony of Officer Matthew Reihart, who indicated that, when he responded to a report of shots fired at Solomon Homes, he spoke to Mr. Hinton. Mr. Hinton advised the officer that he had witnessed the incident and that that three black males in a four-door green sedan fled the scene and were headed towards Altoona. N.T., Pretrial Motions, 7/28/16, at 8. Officer Reihart relayed the information to Sergeant Gerald Stofko. *Id*. at 9. Sergeant Stofko also testified at the suppression hearing, and indicated that he also recalled a witness indicating "that the actors had fled in a dark green vehicle and they were headed to the

Altoona area." *Id*. at 17. Accordingly, he had the police dispatch put out a BOLO for the vehicle. *Id*.

At the outset of the suppression hearing, the Commonwealth offered as an exhibit the transcript from the preliminary hearing, expressly indicating that it was offering the testimony for purposes of the suppression motion. *Id*. at 4. When asked if there were any objections to the introduction of the exhibit "for the purposes stated," Appellant indicated that he had none. *Id*.

Officer Mummert testified at the preliminary hearing. He indicated that he heard from the Cambria County 911 center that there was "a stop and hold for a green in color, four-door sedan with three black males believed to be heading toward the Altoona area, that had just been involved with a shooting in the City of Johnstown." N.T. Preliminary Hearing, 9/23/15, at 14. The officer positioned his vehicle along State Route 22, saw a vehicle matching the description and pulled out to follow the vehicle, which swerved off the road. *Id*. at 15. Another police vehicle pulled behind the suspects, and various officers tended to the three occupants while Officer Mummert stood at the rear of the vehicle. Appellant was sent to Officer Mummert for a pat down, at which time he discerned a pipe in Appellant's pocket. Officer Mummert then took Appellant into custody and emptied Appellant's pockets, revealing ninety bags of heroin. *Id*. at 16-17. Appellant, then represented by counsel, cross-examined Officer Mummert concerning this testimony. *Id*. at 19-21, 23.

From the above, it is clear that Officer Reihart and Sergeant Stofko had reasonable suspicion to stop the vehicle in which Appellant was travelling, as it matched the description provided by a known informant who had indicated it was the vehicle in which the perpetrators fled. ***Commonwealth v. Hayward***, 756 A.2d 23, 34 (Pa.Super. 2000) (noting indicia of reliability necessary to justify investigatory detention based upon a tip is present when the informant is identified to police). Therefore, Officer Mummert, acting upon their knowledge, had the authority to conduct the investigative detention of the vehicle in their stead. ***See***, ***e.g.***, ***Commonwealth v. Chernosky***, 874 A.2d 123, 126 (Pa.Super. 2005) (*en banc*) ("[A]n officer is permitted to conduct a seizure based upon a police radio broadcast when directed to perform the seizure by an officer in possession of facts sufficient to justify the interdiction.").

Hence, the Commonwealth came forward with evidence to establish that the stop was supported by reasonable suspicion. The trial court did not place the burden upon Appellant to prove that the stop was not justified. Further, we discern no abuse of discretion in the trial court's ruling that if Appellant wished to further cross-examine Officer Mummert beyond that reflected in the transcript offered into evidence without objection from Appellant, he should have subpoenaed him. ***See*** Trial Court Opinion, 8/30/16, at 13. Appellant's sixth issue merits no relief.

Next, Appellant claims that the Johnstown Police Department lacked jurisdiction to prosecute him for his possession in Cresson Township of drugs and paraphernalia. Appellant's brief at 22. He contends that any charges relating to the stop of the vehicle should have been filed by the Cresson Township Police Department. *Id*. at 23. Therefore, Appellant argues that he should have been found not guilty "of all of the drug related offenses." *Id*. at 22.

Appellant was charged with conspiracy to commit robbery. The object of the conspiracy was to take possession of Mr. Peebles's heroin. One of the co-conspirators (Simmons, as it turned out) took possession of the heroin in Building 5 of the Solomon Homes in Johnstown. That heroin was ultimately recovered from Appellant's pocket in Cresson Township. It is axiomatic that a defendant is "liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). As such, whether the stolen heroin was transferred from Simmons to Appellant before or after they left Johnstown, Appellant is liable for possessing it in Johnstown. *See*, *e.g.*, *Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa.Super. 2006) (holding defendant was properly convicted of possession with intent to deliver although he was merely a lookout and never possessed the drugs possessed and sold by his co-conspirator). Accordingly, the charges were properly brought by the Johnstown Police Department. Appellant's claim lacks merit.

In his last five issues, Appellant contends that the trial court erred in denying his requests for funds to pay a videographer, a DNA expert, a ballistics expert, a fingerprint expert, and a crime-scene reconstructionist. We begin with a discussion of the applicable law.

"The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion." *Commonwealth v. Cannon*, 954 A.2d 1222, 1226 (Pa.Super. 2008) (internal quotation marks omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Murphy*, 182 A.3d 1002, 1004–05 (Pa.Super. 2018) (citation and internal quotation marks omitted)

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

*Commonwealth v. Konias*, 136 A.3d 1014, 1019 (Pa.Super. 2016) (citations and quotation marks omitted). Nonetheless, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." *Id*. at 1020-21 (internal quotation marks omitted). Rather,

"[t]here must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." ***Commonwealth v. Curnutte***, 871 A.2d 839, 842 (Pa.Super. 2005).

With his consolidated argument concerning all of the requested experts, Appellant largely engages in a confusing discussion of cases that are not particularly relevant to his claims. He discusses at length the necessity that a trial court determine whether a defendant is entitled to *in forma pauperis* ("IFP") status before denying requested funds, but then acknowledges that the trial court granted IFP status to Appellant. Appellant's brief at 26-30. He also discusses cases in which this Court held that indigent defendants were entitled to court-appointed experts in circumstances wholly unlike those of the present case. ***See***, ***e.g.***, ***id.*** at 26 (discussing holding in ***Curnette***, ***supra***, that an indigent defendant subject to a sexually-violent-predator hearing is entitled to the appointment of a psychologist expert).

The discussion Appellant offers as to the context and relevancy of the requested experts is, in its entirety, as follows.

> Appellant made requests for and was denied expert assistance in order to prepare his case for trial. He was granted a private investigator, however, his other requests were denied by the trial court. Appellant avers that pursuant to the arguments set forth herein and during his motion that he set forth well[-]reasoned grounds for expert assistance, and the failure of the court to grant him same was in essence a denial of his right to a fair trial and precedent decisions set forth herein.
>
> Appellant avers that the trial was unfair as the Commonwealth had in essence an entire police force, investigators, crime lab specialists, and he was afforded a single private investigator and

- 26 -

stand-by counsel. Appellant avers that he had a right to investigate the missing video. That he had a right to determine the authenticity of the video displayed. That he had a right to have a crime scene reconstructionist to help explain some of the discrepancies presented therein. He had a right to a DNA expert to attempt to locate his DNA on the money found on the victim. The [C]ommonwealth[']s theory was that they went there to rob someone. [Appellant] wished to show that his DNA was on the money that was located on the victim to show that he went with money, tried to buy drugs, and something went incredibly wrong; he had to defend himself, and unfortunately Mr. Peebles died. Appellant wished to explore the argument that: if I was going to rob someone, why was my DNA found on the money in the drug dealer[']s pocket?

Appellant's brief at 30-31 (citation omitted).

Appellant has failed to convince us that the trial court erred and that relief is due. The aforementioned arguments, as well as Appellant's position at trial, negate any reason to secure a separate ballistics expert: Appellant expressly acknowledged that he shot Mr. Peebles. Similarly, the Commonwealth offered no fingerprint evidence against Appellant, and we fail to see how a fingerprint expert could have supported his stated defense.

Further, the trial court did appoint an investigator to assist Appellant; he points to nothing that suggests the trial court disallowed that investigator to seek the missing video footage. Appellant does not now, nor did he in his motion in the trial court, identify what discrepancies an accident reconstructionist could explain. His claim that the video from the camera inside of the building was somehow altered is equally vague and unsupported. The trial court properly determined that the issue could be developed through cross-examination. *Accord Commonwealth v. Showers*, 782 A.2d 1010,

1021 (Pa.Super. 2001) (holding defense expert testimony is unnecessary where effective cross-examination can elicit helpful testimony).

The Commonwealth offered no DNA evidence to tie Appellant to the crime, but Appellant now contends that he should have been permitted to test for his DNA on the money recovered from Mr. Peebles's pocket to show he did not steal the drugs. The record reveals, however, that this was not the basis for his request to the trial court. There he focused entirely on the weapons recovered from the search of the vehicle, indicating that he wanted to show that he was not the shooter. N.T. Pretrial Motions, 7/11/16, at 7, 11. In his motion for reconsideration, Appellant again referenced a DNA expert only in connection with the firearms, indicating he wished "to verify if there was any other D.N.A. evidence on the weapon alleged to have been used in the crime." Motion for Reconsideration, 8/1/16, at 2. Appellant cannot now ask this Court to find that the trial court abused its discretion in rejecting a request that he did not make.

In sum, Appellant has not demonstrated that the trial court's decisions regarding his expert requests were manifestly unreasonable or the product of partiality, bias, prejudice, or ill-will. Accordingly, Appellant's final five issues warrant no relief from this Court.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2018