OPINION BY OLSON, J.: The Commonwealth of Pennsylvania appeals from the October 7, 2016 order granting Appellee Brian Wayne Carper’s suppression motion, and granting, in part, his habeas corpus motion. In this case, we conclude that Appellee preserved his state constitutional claim in his post-suppression hearing brief. We hold that blood draw evidence collected prior to June 23, 2016 is not admissible under Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) and Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987),[1] as no goodrfaith exception to the exclusionary' rule' exists under Article I, Section'8 of the Pennsylvania Constitution. Finally," we hold that blood draw evidence is-necessary to make a prima facie showing that a defendant violated 75 Pa. C.S.A. § 3802(d)(1). Accordingly, we affirm. The factual background .and procedural history of this case are as follows. On October 13, 2014, a Pennsylvania. State Police trooper pulled Appellee over for an expired inspection sticker. During the ensuing interaction, the trooper found evidence that Appellee was driving under the influence of a controlled substance. Appel-lee was transported to a local hospital and informed, by a reading of the DL-26 form, that, if he did not consent to a blood draw, he would face increased criminal penalties, Appellee then agreed to the blood draw, which showed the presence of a controlled substance. On February 12, 2016, the Commonwealth charged Appellee via criminal information with two counts of driving under the influence (“DUI”)-controlled substance,[2] manufacturing a designer drug,[3] possession of drug paraphernalia,[4] and three summary offenses. On September 1, 2016, Appellee moved to suppress the blood draw evidence. He argued that the evidence was collected in violation of the Fourth Amendment of the United States Constitution. Appellee also moved for a writ of habeas corpus with respect to the DUI-controlled substance charges because, he argued, without thé blood draw evidence the Commonwealth failed to make a prima facie case. Thereafter, the trial court held a suppression hearing which encompassed this case and six other cases which raised similar legal issues. Pursuant to the trial court’s order, Appellee filed a post-suppression hearing brief. In that brief, Ap-pellee, for the first time,, argued that Article I, Section 8 of the Pennsylvania Constitution barred admission of the blood draw evidence. On October 7, 2016, the trial court granted the suppression motion. The trial court also granted the habeas corpus motion with respect to count two of the criminal information, which charged Appellee with DUI-controlled substance in violation of 75 Pa. C.S.A. § 3802(d)(1), and denied the habe-as corpus motion in all other respects. The Commonwealth filed this timely interlocutory appeal as of right.[5] See Pa. R.A.P. 311(d). The Commonwealth presents three issues for our review: 1. Whether the [trial court] erred by ruling that [Davis and Krull] were inapplicable under Article [I,] Section 8 of the. Pennsylvania Constitution when [Appellee] had only made a claim under the Fourth Amendment of the Federal Constitution and had implicitly waived all claims under Article [I,] Section 8[?] 2. Whether the [trial] court erred by suppressing evidence that was seized based upon the officer’s good faith reliance on appellate precedent^] 3. Whether the trial court erred by granting the motion for writ of habe-as corpus and holding that the Commonwealth required a blood test to meet its burden when there is no such language in the [statute?] Commonwealth’s Brief at 6.[6] The Commonwealth’s first two claims challenge the trial court’s order suppressing the results of the blood draw. “Once a motion to suppress evidence has been filed, it is the Commonwealth’s burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant’s rights.” Commonwealth v. Evans, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court’s order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. See Commonwealth v. Champney, 161 A.3d 265, 271 (Pa. Super. 2017) (en banc) (citation omitted). “[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court.” In re L.J., 622 Pa. 126, 79 A.3d 1073, 1080 (2013) (citation omitted). “When the Commonwealth appeals from a suppression order, we ... consider only the evidence from the defendant’s witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.” Commonwealth v. Young, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted). “Where the [trial] court’s factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court’s legal conclusions are erroneous.” Commonwealth v. Palmer, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted). In order to understand the issues presented in this case; it is necessary to review the change in the law which prompted Appellee to file his suppression motion. When Appellee was arrested and gave consent to the blood draw, the warnings regarding increased criminal penalties for refusing a blood draw (included in form DL-26) were legally correct. While Appel-lee’s case was pending, however,- the Supreme Court of the United States decided Birchfield v. North Dakota, — U.S. —, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). In Birchfield, the Supreme Court of the United States considered whether a blood draw was subject to one of the limited exceptions to the Fourth Amendment’s warrant requirement. “In Birchfield, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except In certain limited circumstances.” Commonwealth v: Giron, 155 A.3d 635, 637 n.1 (Pa. Super. 2017) (citation omitted). Although Birchfíeld, Evans, and Giron were DUI-alcohol cases, their reasoning is eqüally applicable in DUI-controlled substance cases. Commonwealth v. Ennels, 167 A.3d 716, 719-22 (Pa. Super. 2017), Therefore, in the wake of Birchfíeld, the DL-26 warnings read to Appellee were partially incorrect insofar as they advised Appellee that he faced additional charges and/or enhanced penalties if he refused the blood draw. Notwithstanding the issuance of Birchfield, the Commonwealth maintains that the results of Appellee’s blood test withstand suppression since the good-faith exception applies in this case.[7] It is well-settled that a blood draw is a search under the Fourth Amendment of the United States Constitution. See Skinner v. Ry. Labor Execs.’ Assn., 489 U.S. 602, 616-617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); Schmerber v. California, 384 U.S. 757, 767-768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The fact that a blood draw is a search, however, does not end the inquiry. “As the text indicates and [the Supreme Court of the. United States has] repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness,” Heien v. North Carolina, — U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014) (internal quotation marks and citation omitted). For this reason, the Supreme Court of the United States has created a number of exceptions to the Fourth Amendment’s warrant requirement. One such exception is if a defendant consents to a search. See Illinois v. Rodriguez, 497 U.S. 177, 183-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Another such exception is a search conducted pursuant to exigent. circumstances, ie., when police have insufficient time to seek a warrant because of an emergency. See Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). In Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), the Supreme Court of the United States held that the exigent circumstances exception rarely applies in DUI cases. In this case, however, the Commonwealth does not argue that either the consent search or exigent circumstances exceptions apply. Instead, it argues only that the good-faith exception to the exclusionary rule applies in this case. “To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the- [Supreme Court of the United States] adopted the exclusionary rule, which bars the use of evidence obtained. through an illegal search and seizure.” Commonwealth v. Arter, 151 A.3d 149, 153 (Pa. 2016) (citation omitted). After approximately two decades of strict adherence to the exclusionary rule, the Supreme Court of the United States adopted the good-faith exception to the exclusionary rule. Under the -good-faith exception, “when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its •force, and exclusion [is not appropriate],” Davis, 564 U.S. at 238, 131 S.Ct. 2419 (internal quotation marks and citations omitted). In Davis, the Court held that when a police officer conducts a search pursuant to binding appellate, precedent, which" is later overturned, the evidence seized as a result of that search is admissible under the good-faith exception. Id. at 239-241, 131 S.Ct. 2419. In Krull, police conducted a warrantless administrative search pursuant to a state statute. Later, that statute was found to be unconstitutional. Nonetheless, the Supreme Court of the United States held that the good-faith exception to the exclusionary rule applied because the officer acted in an objectively reasonable manner in relying upon the subsequently. invalidated statute. Krull, 480 U.S. at 349-351, 107 S.Ct. 1160. Therefore, evidence that is collected pursuant to a .state statute-.that has previously been upheld by an appellate court, but which is later declared unconstitutional, is generally admissible under the good-faith exception. The good-faith exception distinguishes .the Fourth Amendment of the United States Constitution from its -Pennsylvania counterpart since “it is settled that under Article I, Section 8 of the Pennsylvania [Constitution, a good[-]faith ex-, ception to the exclusionary rule does not exist.” Commonwealth v. Frederick, 124 A.3d 748, 756 (Pa. Super. 2015), appeal denied, 635 Pa. 769, 138 A.3d 2 (2016) (citations omitted); Commonwealth v. Arnold, 932 A.2d 143, 148 (Pa. Super. 2007) (citation omitted); Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887, 888 (1991). Although a concurring opinion authored by a member of .this Court suggests that the good-faith exception may apply to exclusionary claims raised under Article I, Section 8 of the Pennsylvania Constitution in circumstances such as the ones present in this case, see Commonwealth v. Burgos, 64 A.3d 641, 657 (Pa. Super. 2013) (Shogan, J., concurring), appeal denied, 621 Pa. 686, 77 A.3d 635 (2013), the majority in Burgos explicitly rejected this statement and noted that “the good[-]faith exception does not exist [under] Pennsylvania [law].” Id. at 657 n.22 (citation omitted). We have traced these distinctions between the Fourth Amendment' of the United States Constitution and Article I, Section 8 because the precise legal authority Appellee cited in support of his motion has a significant impact upon the resolution of the instant appeal. The Commonwealth correctly notes that Appellee' only moved to suppress the blood draw evidence under the Fourth Amendment of the United States Constitution. See Appellee’s Suppression Motion, 9/1/16, at 3. Moreover, Appellee’s' counsel never mentioned the Pennsylvania Constitution at the suppression hearing. We conclude, however, that Appellee preserved his state constitutional claim in his post-suppression hearing brief. The Commonwealth cites Commonwealth v. Freeman, 128 A.3d 1231 (Pa. Super. 2015) in support of its argument that Appellee’s post-suppression hearing brief was insufficient to preserve his Article I, Section 8 claim. Freeman, however, involved a case in which waiver occurred because the defendant failed to present the suppression issue to the trial- court either before, during, or after the suppression hearing. See id. at 1242. For that reason, this Court never addressed whether raising a suppression issue in a post-suppression hearing brief was sufficient to preserve the issue. See id. Although Freeman didn’t address whether raising an issue in a post-suppression hearing brief preserved an issue, we find instructive this Court’s recent decision in Champney. In Champney, this Court found that the defendant failed to preserve a suppression issue because he failed to raise it in his motion to suppress, at. the suppression hearing, or in a post-suppression hearing brief. See id. at 285 n.25. This Court’s statement that the defendant failed to include the issue in a post-suppression hearing brief indicates that it' is possible to preserve the issue in a post-hearing submission. The requirement that a defendant raise the grounds for suppression in his or her suppression motion ensures that the Commonwealth is put on notice of what evidence it must produce at the suppression hearing in order to satisfy its burden of proving that the evidence was legally obtained. Cf. Commonwealth v. McDonald, 881 A.2d 858, 860-861 (Pa. Super. 2005) (internal quotation marks and citation omitted) (“[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.”). In this case, the Commonwealth extensively addressed the Article I, Section 8 issue in its brief'filéd prior to the suppression hearing. Commonwealth’s Brief in Opposition, 9/15/16, at 5-10, It.also addressed the Article I, Section 8 issue in its argument prior .to the beginning of the suppression hearing. N.T., 9/15/16, at 5-12. At the conclusion of the suppression hearing, the Commonwealth stated that it called a witness in order to prove that Appellee’s consent was valid notwithstanding the partially inaccurate DL-26 warnings. See id. at 24-25. This is the only additional evidence that the Commonwealth needed to offer because of Appel-lee’s Article I, Section 8 claim. Finally, the Commonwealth did not object to Appellee raising a Article I, Section 8 claim before the trial court. Thus, the Commonwealth was not unfairly prejudiced by Appellee’s delay in raising his Article I, Section 8 claim. This case is similar to Commonwealth v. Stoops, 723 A.2d 184 (Pa. Super. 1998), appeal denied, 560 Pa. 744, 747 A.2d 368 (1999). In Stoops, the Commonwealth argued, like it does in the case at bar, that the trial court improperly raised a suppression issue sua sponte because it was not included in the defendant’s suppression motion. This Court rejected that argument for two reasons. First, the necessary evi-dentiary record was developed at the suppression hearing. See id. at 188. Second, the defendant raised the issue in his post-suppression hearing brief and the Commonwealth did not object. See id. As noted above, in this case the necessary evidentia-ry record was developed at the suppression hearing and the Commonwealth did not object to Appellee raising his Article I, Section 8 claim in his post-suppression hearing brief. Accordingly, we conclude that Appellee properly raised and preserved his Article I, Section 8 claim.[8] As we conclude that Appellee properly preserved his Article I, Section 8 claim, the trial court correctly granted his motion to suppress. As noted above, the good-faith exception to the exclusionary rule does not exist under Article I, Section 8. Frederick, 124 A.3d at 756 (citations omitted). As such, the fact that police acted in good-faith reliance on appellate precedent was irrelevant when determining if the blood draw evidence was admissible at trial. Therefore, the Commonwealth is not entitled to relief on its first two issues. In its final issue, the Commonwealth argues that the trial court erred in granting, in part, Appellee’s habeas corpus motion. We review a trial court’s grant of a pre-trial habeas corpus motion de novo and our scope of review is plenary. See Commonwealth v. Dantzler, 135 A.3d 1109, 1112 (Pa. Super. 2016) (en banc). As this Court explained in Dantzler: A pre-trial habeas corpus motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a prima facie case. To demonstrate that a prima facie case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant’s complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof. Id. (internal quotation marks and citations omitted). The Commonwealth contends that it can prove Appellee violated section 3802(d)(1) by wholly circumstantial evidence. It argues, therefore, that the blood draw evidence was not necessary to make a prima facie case. Our Supreme Court, however, has held that “[ ]section 3802(d)(1) requires a measurement to determine if any amount of a Schedule I, II, or III controlled substance is detectable in .the defendant’s blood.” Commonwealth v. Griffith, 613 Pa. 171, 32 A.3d 1231, 1239 (2011). In other words, the blood draw evidence was necessary to make a pñma facie showing that Appellee violated section 3802(d)(1). As noted above, we conclude that the trial court properly suppressed the blood draw evidence. Therefore, the Commonwealth failed to make a prima facie showing that Appellee violated section 3802(d)(1) and the trial court properly granted Appellee’s habeas corpus motion with respect to that charge. Order affirmed. Case remanded. Jurisdiction relinquished. Judge Dubow joins this Opinion. President Judge Emeritus Stevens concurs in the result. . Referred to as the Davis/Krull rule, the Supreme Court of the United States held that when the police conduct a search in objectively reasonable reliancé upon binding appellate precedent or statutory authority which is later invalidated, the exclusionary rule does not apply. Davis, 564 U.S. at 249-250, 131 S.Ct. 2419; Krull, 480 U.S. at 347, 107 S.Ct. 1160. . 75 Pa.C.S.A. §§ 3802(d)(1) and 3802(d)(2). . 35P.S. § 780-113(a)(36). . 35P.S. § 780-113(a)(32). . On November 8, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal (“concise statement”). See Pa.R.A.P. 1925(b). On November 29, 2016, the Commonwealth filed its concise statement. On December 9, 2016, the trial court issued an order stating that its reasoning for granting Appellee's suppression motion, and granting, in part, his habeas corpus motion, was included in its October 7, 2016 opinion. All of the Commonwealth's issues were included in its concise statement. . We have re-numbered the issues for ease of disposition. . The Commonwealth attempts to draw a distinction between the Davis/KruU rule and the good-faith exception to the exclusionary rule originally announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court of the United States made clear in both Davis and Krull that it was merely applying the good-faith exception to the exclusionary rule and not announcing a new exception to the exclusionary rule. See Davis, 564 U.S. at 249, 131 S.Ct. 2419 (this case "comes within the good-faith exception”); Krull, 480 U.S. at 346, 107 S.Ct. 1160 (internal citation omitted) (“We granted certiorari to consider whether [the] good-faith exception to the Fourth Amendment exclusionary rule applies” in this case.). Thus, the Davis/Krutt rule is just a specific example of the good-faith exception. . Since Appellee’s inclusion of his state constitutional claim in a post-hearing submission allowed the' trial court to consider the issue in light of the facts developed at the suppression hearing, we do not perceive Appellee’s Article I, Section 8 claim as one that has been raised for the first time on appeal. See Pa.R.A.P. 302(a).