2021 PA Super 172

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN PRIZZIA | : | |
| | : | |
| Appellant | : | No. 1897 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 22, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000806-2019

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.:                    **FILED AUGUST 24, 2021**

Appellant, Shawn Prizzia, appeals from the judgment of sentence of an aggregate term of incarceration of 90 days' to two years' less one day, imposed after she was convicted of driving under the influence of a controlled substance ("DUI-Controlled Substance"), 75 Pa.C.S. § 3802(a)(1)(i), possession of a controlled substance, 35 P.S. § 780-113(a)(16), improper sun screening on a vehicle ("window-tint violation"), 75 Pa.C.S. § 4524(e)(1), and related charges.  On appeal, Appellant challenges the trial court's denial of her pretrial motion to suppress, in which she contended, *inter alia*, that the stop of her vehicle was illegal.  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

In the trial court's opinion accompanying its order denying Appellant's motion to suppress, it summarized the facts leading to the stop of Appellant's vehicle as follows:

On November 28, 2018, Trooper Anthony Spegar of the Pennsylvania State Police was on routine patrol in East Stroudsburg Borough, Monroe County. While on patrol, Trooper Spegar observed a vehicle on the road with "windows tinted to the degree that [he] could not see the operator inside the vehicle." Notes of Testimony [("N.T.")] … Hearing, 08/13/19, [at] 7…. Trooper Spegar testified that prior to initiating a traffic stop, he followed [Appellant's] white Scion TC for a period of time and at no distance could he see through the "side, front, [or] passenger windows." [*Id.* at] 7-9. Trooper Spegar further testified that in his experience as a Pennsylvania State Trooper, he is aware that at the distances from which he observed [Appellant's] vehicle prior to conducting a traffic stop, manufacturer-installed tint would not render the windows too dark to see through. [*Id.* at] 9-10. Based on his observations, Trooper Spegar conducted a traffic stop of [Appellant's] vehicle based on illegal window tint. [*Id.* at] 10.

*See* Trial Court Opinion ("TCO"), 12/9/19, at 1-2.

During the course of Appellant's traffic stop, Trooper Spegar discovered narcotics and paraphernalia in the car and in Appellant's purse. Appellant also exhibited signs that she was impaired on narcotics, including constricted pupils, heavy breathing, shaking hands, and rapid, slurred, and incoherent speech. Field sobriety and blood tests were subsequently conducted, the results of which demonstrated that Appellant was driving while impaired by a controlled substance.[1]

---

[1] The court provided a detailed summary of what transpired during the stop of Appellant's vehicle that led to her arrest and conviction for DUI, possession of a controlled substance, and related offenses. *See* TCO at 2-7.

Appellant was arrested and charged with DUI-Controlled Substance, possession of a controlled substance, a window-tint violation, and related offenses. Prior to trial, she filed a motion to suppress, arguing, *inter alia*, that Trooper Spegar's stop of her vehicle was illegal. After a hearing, the court issued an order and accompanying opinion denying Appellant's motion. She filed a motion for reconsideration, which the court denied. Her case then proceeded to a non-jury trial on June 23, 2020. At the close thereof, the court convicted Appellant of all charges and, on September 22, 2020, it sentenced her to the aggregate term stated *supra*.

Appellant filed a timely notice of appeal, and she complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter filed a Rule 1925(a) opinion, stating that it was relying on the rationale set forth in its December 9, 2019 opinion accompanying the order denying Appellant's motion to suppress. Herein, Appellant states two issues for our review:

> 1. Whether the evidence against … Appellant should have been suppressed where police conducted the stop for window tint, where tint placed by a manufacturer is not illegal under 75 Pa.C.S.[] § 4524(e), and where police testified to no investigation, knowledge, training, or experience on whether the particular tint was placed by a manufacturer?
>
> 2. Whether the lower court erroneously determined that the duration of the stop was not raised as an issue where Appellant challenged the lawfulness of the stop in her motion and argued the duration was unlawful in her brief?

Appellant's Brief at 4.

Appellant's first issue challenges the court's denial of her motion to suppress based on the alleged illegality of the stop of her vehicle. Preliminarily, we note that,

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, it is uncontradicted that Trooper Spegar stopped Appellant's vehicle for a window-tint violation under 75 Pa.C.S. § 4524(e)(1). Section 4524(e) states, in pertinent part:

**(e) Sun screening and other materials prohibited.--**

(1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

(2) This subsection does not apply to:

    (i) A vehicle which is equipped with tinted windows of the type and specification that were installed by the

manufacturer of the vehicle or to any hearse, ambulance, government vehicle or any other vehicle for which a currently valid certificate of exemption has been issued in accordance with regulations adopted by the department.

(ii) A vehicle which is equipped with tinted windows, sun screening devices or other materials which comply with all applicable Federal regulations and for which a currently valid certificate of exemption for medical reasons has been issued in accordance with regulations adopted by the department.

75 Pa.C.S. § 4524(e)(1), (e)(2)(i)-(ii).

Before examining Appellant's challenges to Trooper Spegar's observations regarding the illegality of the window tint on her vehicle, we must address her claim that "this Court has issued conflicting opinions on whether the law requires reasonable suspicion or probable cause" to justify a vehicle stop based solely on a violation of section 4524(e)(1). Appellant's Brief at 16. According to Appellant, this Court applied a reasonable-suspicion standard to this type of stop in *Commonwealth v. Postie*, 110 A.3d 1034 (Pa. Super. 2015), yet later used a probable-cause standard to assess the legality of the same type of traffic stop in *Commonwealth v. Harris*, 176 A.3d 1009 (Pa. Super. 2017).

We disagree with Appellant that *Postie* and *Harris* are irreconcilable. First, as we noted in *Harris*, "[t]he issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." *Harris*, 176 A.3d at 1019 n.3 (citation omitted). We further recognized in *Harris* that,

[o]ur analysis of the quantum of cause required for a traffic stop begins with 75 Pa.C.S.[] § 6308(b), which provides:

> **(b) Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.[] § 6308(b) (bold in original).

"Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citation omitted). For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. [*Id.*] … ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."). Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense. *Commonwealth v. Chase*, … 960 A.2d 108 ([Pa.] 2008).

*Id.*

In *Postie*, we did not acknowledge *Feczko's* holding regarding what quantum of cause will support a traffic stop. Instead, we simply set forth the reasonable-suspicion language of 75 Pa.C.S. § 6308(b) and other law regarding reasonable suspicion to conduct a traffic stop. *Postie*, 110 A.3d at

1039-40. We then explained that the stop of Postie's vehicle was lawful for the following reasons:

> In denying [the a]ppellant's suppression motion, the trial court held:
>
>> I find credible [the trooper's] testimony that he could not see through the rear window and that he believed the tint to be so dark that it was in violation of the inspection code. Furthermore, [the trooper] had seen this same vehicle before and issued the driver a warning to have the tint removed. Upon seeing it a second time in the same condition, [the trooper] likely **had probable cause** to pull the vehicle over.
>
> Order, 10/15/12, at 2 n.1....
>
> In light of the trial court's specific finding that [the trooper's] testimony was credible, we find no abuse of discretion in its holding that the trooper stated specific observations and properly concluded that criminal activity was afoot. The trooper clearly testified [that,] several months earlier, he issued a warning to the driver of the vehicle to remove the tint on the windows, and on the day in question, observed the same vehicle with windows dark enough that he could not see through them. Furthermore, we find no merit to [the a]ppellant's argument that he was not issued a citation for tinted windows, as the law does not require a violation to be established. Accordingly, we do not disturb the trial court's suppression order.

*Id.* at 1040 (footnote, internal citation, and some emphasis omitted; bolded emphasis added). Clearly, the trial court in *Postie* applied a probable cause standard to the vehicle stop, and this Court adopted that analysis in affirming the order denying suppression. Thus, it appears that the *Postie* panel actually applied a probable cause assessment to the traffic stop, despite setting forth law regarding reasonable suspicion.

- 7 -

In **Harris**, we similarly concluded that the stopping officer was required to possess probable cause to pull over Harris's vehicle for a window-tint violation. There, the officer testified that the window tint on Harris's vehicle was "extremely dark[,]" and "covered all of the vehicle's side windows," such that the officer "could not see inside the vehicle through the passenger side" to even "determine whether a male or female was driving the vehicle." **Harris**, 176 A.3d at 1013. Because the windows were so dark that the officer could not see inside the vehicle at all, and no further investigation was necessary for the officer to discern that the vehicle's window tint violated section 4524(e)(1), we found that the officer was required to have probable cause to stop Harris's car. **Id.** at 1019 ("Since an investigation following the traffic stop would have provided [the o]fficer … with no additional information as to whether [Harris] violated [s]ection 4524(e), probable cause was necessary to initiate the stop on this basis.") (citing **Feczko**, **supra**).

We do not discern a conflict between **Postie** and **Harris**. The **Postie** panel adopted the trial court's probable-cause assessment in affirming the order denying suppression, and the **Harris** panel also applied a probable-cause standard to determine if the stop in that case was lawful.

Here, the trial court found that "Trooper Spegar credibly testified that the basis for the traffic stop was that he 'observed a vehicle traveling in front of [him] with windows tinted to a degree that [he] could not see the operator inside the vehicle.'" TCO at 11-12 (quoting N.T. Hearing at 7). The trooper added "that[,] in his training and experience, he is able to see inside vehicles

with manufacturer tint at the same distances and angles he viewed [Appellant's] vehicle prior to initiating the traffic stop." *Id.* at 12 (citing N.T. Hearing at 9-10). As in *Postie* and *Harris*, the facts demonstrate that Trooper Spegar could discern, from his initial observation of Appellant's vehicle, that her window tint violated section 4524(e)(1) because the trooper could not see into her car. Trooper Spegar did not state that his stopping Appellant's vehicle served any investigable purpose. Thus, he was required to possess probable cause to conduct the traffic stop for the section 4524(e)(1) violation.[2]

---

[2] We reject the Commonwealth's argument that a reasonable suspicion standard must be applied to a stop for a window-tint violation under section 4524(e)(1). In support of this position, the Commonwealth relies on the following footnote in *Commonwealth v. Cartagena*, 63 A.3d 294 (Pa. Super. 2013) (*en banc*):

> There is no measurable amount of tint that renders a vehicle with tinted windows illegal in Pennsylvania. Tint is illegal if, from the point of view of the officer, he or she is unable to see inside of a vehicle through the windshield, side wing, or side window. *See* 75 Pa.C.S.[] § 4524(e)(1); *supra* n.2. There is no legislative history surrounding the passage of [s]ection 4524 to elucidate the reason for this subjective standard. Furthermore, police are oftentimes making the **initial determination of reasonable suspicion** to suspect illegal tint from a distance of several car lengths away and at night, as were the circumstances in this case. *See* N.T., 8/18/10, at 4, 7. Thus, it is important in an analysis of the totality of the circumstances to view the presence of the tinted windows in the context of the officer's training and experience with stops involving tinted windows, as well as other factors.

*Id.* at 305 n.26 (emphasis added).

The *Cartagena* panel's brief reference to reasonable suspicion, in a footnote of a decision not specifically addressing what quantum of cause

*(Footnote Continued Next Page)*

Appellant contends that Trooper Spegar lacked probable cause to stop her because "he acknowledged that he did not know the manufacturer tint on the make and model" of Appellant's vehicle. Appellant's Brief at 20 (emphasis omitted). She insists that the trooper merely "offered an unjustified inference that if the window was too dark to see through, then it must not be manufacturer tint. But the statute itself presumes that there will be situations in which the manufacturer tint is too dark to see through." *Id.* According to Appellant, because Trooper Spegar's testimony failed to establish that he was correct that her window-tint was not manufacturer applied when he stopped her car, the stop was illegal.

Appellant's argument is meritless. Trooper Spegar testified that the windows on Appellant's vehicle were so darkly tinted that he could not see inside. This testimony was corroborated by still photographs entered into evidence at the suppression hearing, which showed that "at certain angles,

_____

applies to a vehicle stop for a window-tint violation, does not convince us that a reasonable suspicion standard must apply to all such stops. Instead, in our view, the appropriate quantum of cause necessary to validate a traffic stop based on a violation of section 4524(e)(1) is dependent on the specific facts of each case. In some situations (like **Postie**, **Harris**, and the present case), a probable cause standard will apply because the officer's testimony establishes that a window-tint violation was immediately apparent to the officer, and no further investigatory purpose was served by the traffic stop. In other cases (like **Cartagena**), a reasonable suspicion standard could apply because the officer's testimony demonstrates that he or she stopped the vehicle to get a closer and/or unobstructed view of the windows, in further investigation of whether the tint violates section 4524(e)(1). Accordingly, our decision today should not be read as precluding application of a reasonable suspicion standard to a stop for a window-tint violation, if the specific facts of the case demonstrate that an investigatory purpose was served by the stop.

the side panel windows on [Appellant's] car [were], indeed, darkly tinted to a degree that seeing through [the] same [was] difficult, if not impossible." TCO at 12 (citation omitted). Trooper Spegar's testimony, and the corroborating evidence, demonstrated that the trooper could not see through Appellant's windows, thus establishing probable cause to stop her vehicle for a violation of section 4524(e)(1). *See Harris*, *supra*.

The trooper's additional testimony that, in his experience, car manufacturers do not install tint as dark as that on Appellant's windows was unnecessary to establishing probable cause to conduct the stop. Under section 4524(e)(1), "[t]int is illegal if, from the point of view of the officer, he or she is unable to see inside of a vehicle through the windshield, side wing, or side window." *Cartagena*, 62 A.3d at 305 (citations omitted). Section 4524(e)(2) sets forth exceptions, or affirmative defenses, to criminal culpability for a violation of (e)(1), which are the defendant's burden to prove. *See Commonwealth v. Rodriguez*, 81 A.3d 103, 106 (Pa. Super. 2013) (finding that Rodriguez failed to prove that he was entitled to application of the manufacturer-tint exception because he "presented no argument or evidence related to the installation of tinted windows in his vehicle").

Thus, an officer who observes a window-tint violation under section 4524(e)(1) has no burden to confirm that an (e)(2) exception does *not* apply before he or she has probable cause to stop the vehicle. Rather, to possess probable cause that a vehicle is in violation of section 4524(e)(1), an officer must only observe that the tint on the vehicle's windows is so dark that it

prohibits the officer from seeing inside the car. *See Harris*, 176 A.3d at 1019. Trooper Spegar's testimony established that he had probable cause to stop Appellant's vehicle because her window tint prevented him from seeing inside the car. His additional testimony that he believed, before he stopped Appellant's vehicle, that the manufacturer had not installed the tint on her vehicle was superfluous. As such, Appellant's challenge to the trooper's testimony on this point does not establish that the stop of her vehicle was illegal. Her first issue is meritless.

In Appellant's second issue, she claims that Trooper Spegar's stop of her vehicle was unlawfully prolonged and, therefore, the court should have granted her motion to suppress the evidence obtained during the course of the stop. The trial court deemed Appellant's challenge to the duration of the stop waived based on her failure to specifically raise it in her motion to suppress. In response, Appellant contends that her attack on the duration of the stop was encompassed within her challenge to the legality of the stop in general. She also asserts that she argued the stop was unlawfully prolonged in a brief she filed to support her motion to suppress. *See* Appellant's Brief at 22 (citing Omnibus Brief, 9/4/19, at 9, 11).

Our review of the record confirms that at no point in her motion to suppress, or amendment thereto, did Appellant specifically state she was challenging the duration of the stop. While in her pre-hearing brief, she cited case law pertaining to the duration of a traffic stop, *see* Omnibus Brief at 9, Appellant made no effort to discuss how that law applied to the specific facts

of her case, or raise any particular argument regarding why the duration of the stop of her vehicle allegedly rendered it illegal. She also does not cite to where she raised any such argument at the suppression hearing. Instead, Appellant only specifically asserted a challenge to the duration of the stop in her motion for reconsideration filed after the court issued its order denying her motion to suppress.[3] Accordingly, we agree with trial court that Appellant waived this claim for our review. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1241 (Pa. Super. 2015) (stating that suppression motions "must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression") (citation omitted); *see also Commonwealth v. McDonald*, 881 A.2d 858, 860 (Pa. 2005) (the Commonwealth's burden to establish that the challenged evidence was legally

---

[3] Appellant's raising this issue for the first time **after** the court denied her suppression motion makes her case distinguishable from the two cases on which she relies, *Commonwealth v. Stoops*, 723 A.2d 184, 188 (Pa. Super. 1998) (finding a suppression issue preserved where it was raised in the defendant's post-hearing brief (filed before the court denied the motion), the Commonwealth did not object to the defendant's raising of the claim in this fashion, and an evidentiary record had been adequately developed on the issue), and *Commonwealth v. Carper*, 172 A.3d 613, 620 (Pa. Super. 2017) (finding no waiver where Carper raised the claim for the first time in his post-hearing brief, the Commonwealth did not object, and the court had an adequate opportunity to consider the issue, in light of the facts developed at the suppression hearing, before ruling on Carper's motion). In both *Stoops* and *Carper*, the defendants raised their specific claims before the court ruled on their motions to suppress, thereby providing the Commonwealth an opportunity to object (which it did not) and the court the ability to consider the claim in ruling on the motion. Here, in contrast, Appellant waited until after the court had denied her motion to suppress to specifically assert her challenge to the duration of the stop. Accordingly, *Stoops* and *Carper* do not apply.

obtained is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof").

In any event, even if not waived, we would conclude that Appellant's challenge to the duration of the traffic stop is meritless. According to Appellant, "[a] seizure justified only by a police-observed traffic violation 'becomes unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." Appellant's Brief at 24-25 (quoting *Rodriguez v. United States*, 575 U.S. 348 (2015)). Appellant stresses that, here, the sole basis for the stop of her car was the illegal window tint, yet Trooper Spegar made no attempt to investigate whether the tint on her windows was, in fact, illegal during the duration of the stop. Accordingly, she concludes that the stop was unlawfully delayed and the court should have ordered the evidence suppressed.

*Rodriguez* is easily distinguishable from the instant case. There, a K-9 police officer, who had his dog in his patrol car, stopped Rodriguez's vehicle for driving on the shoulder of a highway. *Rodriguez*, 575 U.S. at 351. After completing his investigation of the traffic violation and issuing Rodriguez a ticket, the officer continued to detain Rodriguez while he walked his canine around Rodriguez's vehicle, which ultimately led to the discovery of methamphetamine. *Id.* at 351-52. The United States Supreme Court held that because the purpose of the stop had been completed before the dog sniff, the officer was required to possess independent reasonable suspicion of

criminal activity to justify detaining Rodriguez for the dog sniff to be conducted. *Id.* at 358.

Here, when Trooper Spegar approached Appellant's vehicle, he immediately observed that she "was extremely nervous," breathing heavily, and her hands were shaking. TCO at 2 (citing N.T. Hearing at 10). He also observed signs that Appellant was intoxicated, namely, her pupils were constricted, she was speaking very rapidly, and her speech was slurred and incoherent. *Id.* (citing N.T. Hearing at 11). Trooper Spegar testified that,

> [t]hrough his … training and experience with detecting narcotics use in drivers, [he] was immediately able to recognize that, based on his observations, [Appellant] was exhibiting signs of narcotics use…. Trooper Spegar testified that at the time he made contact with [Appellant] and immediately observed these signs of narcotics use, he was aware that any amount of such substances in a person's system while driving is illegal under Pennsylvania law.

*Id.* (citing N.T. at 11).

Based on Trooper Spegar's testimony, we would conclude that he possessed reasonable suspicion, independent from his probable cause for the window-tint violation, that Appellant was driving under the influence of narcotics. Thus, he was justified in extending the duration of the traffic stop to further investigate the DUI offense. Moreover, during the course of the stop, Trooper Spegar discovered that Appellant had a history of drug use, a prior DUI conviction, her passenger was in possession of heroin, and Appellant admitted there were Klonopin pills inside the car for which she did not have a prescription. *See* TCO at 3-4. A search of the car revealed the Klonopin pills,

as well as Gabapentin pills.  **See id.** at 4-5.  We would conclude that the totality of these circumstances provided probable cause to arrest Appellant, thereby validating the trooper's detaining her beyond his investigation into the illegally-tinted windows.  Accordingly, even had Appellant properly preserved this specific challenge to the legality of the stop of her vehicle, we would deem it meritless.

Judgment of sentence affirmed.

Judge Dubow joins this opinion.

President Judge Emeritus Stevens files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2021