J-S36040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARL JOSEPH GINNERY | : | |
| | : | |
| Appellant | : | No. 322 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 24, 2022
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000442-2020

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: FEBRUARY 17, 2023**

Appellant, Karl Joseph Ginnery, appeals from the aggregate judgment

of sentence of three to six years' incarceration imposed by the Court of

Common Pleas of McKean County following a jury trial at which he was

convicted of possession with intent to deliver (PWID) methamphetamine,

possession of an instrument of crime, possession of marijuana, possession of

methamphetamine, possession of benzodiazepine, and two counts of

possession of drug paraphernalia.[1]  For the reasons set forth below, we hold

that the trial court erred in denying a portion of Appellant's motions to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 907(a), 35 P.S. § 780-113(a)(16),
and 35 P.S. § 780-113(a)(32), respectively.

suppress evidence and therefore vacate the judgment of sentence and remand.

This case arises out of a traffic stop that occurred on the morning of September 3, 2020 and an ensuing warrantless search of the car that included a search of a backpack that was in the car. The facts found by the trial court in its decision on Appellant's motions to suppress are as follows:

> On September 3, 2020, Officer Joshua Frederoski of the Bradford City Police Department was in full uniform in a marked police vehicle and on routine patrol in the City of Bradford. He was watching a silver Toyota Camry. He radioed Chief Ward (then Assistant Chief) and advised him that the occupants were "acting suspicious." He watched the vehicle and the two occupants in it with binoculars. The vehicle was parked. He then drove past the silver Toyota and made a U-turn. When he went back he observed that the vehicle had moved and he observed it traveling. He observed: 1) the windows of the Toyota to be heavily tinted; 2) the vehicle had a Pennsylvania registration but a New York inspection sticker; and, he did not observe a "tag" for the vehicle in the back window. He initiated his lights and sirens and stopped the Toyota.
>
> After the Toyota pulled to the side of the roadway Officer Frederoski approached the driver's side window. He asked the driver, Megan Sena, for her driver information. [Appellant] was in the passenger seat. A discussion occurred about that lack of a tag in the window. Ms. Sena indicated that she was borrowing the vehicle and it was just purchased by the owner. There is nothing in the record regarding how [Appellant] came to be a passenger in the vehicle. … While they were having this discussion Officer Frederoski smelled an odor of burnt marijuana. He also noticed a cut cigar wrapper (the outside of the cigar) that was empty. He testified that it is common for individuals smoking marijuana to cut open a cigar, remove the tobacco and place the marijuana in it to smoke it. He also noticed "multiple bags of [Q-]tips[,]" [which he believed] are often utilized to filter illegal controlled substances before use. …

Based on the smell of burnt marijuana and seeing the cut cigar wrapper and [Q-]tips, Officer Frederoski suspected that Ms. Sena may have been driving under the influence of a controlled substance. Therefore, he asked her to exit the vehicle to continue his investigation into a potential DUI.

Chief Ward heard Officer Frederoski's radio announcement that he was stopping the Toyota. He arrived at the scene shortly after the stop. When Officer Frederoski advised him of the [Appellant]'s name, Chief Ward recognized it. [Appellant] had worked as a confidential informant in the past regarding a firearms investigation. … Chief Ward advised Officer Frederoski that he had worked with [Appellant] in the past.

After he asked Ms. Sena to step out of the Toyota, Officer Frederoski asked [Appellant] if [he] would step out of the vehicle to speak to Chief Ward. … Officer Frederoski … asked [Appellant] to exit the vehicle because he had made the decision to search the vehicle and it was a "safety issue having him in the vehicle while I searched." … [In addition,] Officer Frederoski and Chief Ward suspected that Ms. Sena and [Appellant] were involved in drug activity and they wanted to obtain further information from them.

[Appellant] agreed to exit the vehicle and speak to Chief Ward. [Appellant] walked behind the Toyota and spoke to Chief Ward at the front of Chief Ward's patrol vehicle. … Chief Ward … started the conversation with [Appellant] by asking him about his health and how he was doing. He then advised [Appellant] that he was not under arrest. Chief Ward then stated [,] "I am just asking you for your honesty, what have you guys been using today." [Appellant] responded: "just smoking." Chief Ward took this statement as meaning that [Appellant] and Ms. Sena had smoked [m]arijuana only (as opposed to other illegal substances). Chief Ward then read [Appellant] his Miranda[2] rights. Shortly after [Appellant] was read his Miranda rights, Officer Frederoski removed illegal narcotics and items from the Toyota and placed them on the hood of the vehicle. Many of the items were found in a backpack that was in the back seat of the vehicle. When [Appellant] saw the drugs and paraphernalia that Officer Frederoski had found, he told Chief Ward that he was "responsible

_____

[2] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

for all of that," that they were his and not Ms. Sena's. He also made other incriminating statements.

After Ms. Sena and [Appellant] were arrested an issue arose regarding the silver Toyota Camry. Officer Frederoski was concerned about it remaining where it was because "it is a busy area with a lot of traffic." When Officer Frederoski indicated that the vehicle had to be moved, [Appellant] indicated that he would try and call the owner. [Appellant unsuccessfully] tried to call the owner to come and move the vehicle …. Arrangements were then made by Officer Frederoski to have the vehicle towed and impounded.

Trial Court Opinion and Order, 3/17/21, at 1-5 (footnotes omitted).

Appellant was charged with PWID marijuana, PWID methamphetamine, PWID benzodiazepine, possession of marijuana, possession of methamphetamine, possession of benzodiazepine, three counts possession of drug paraphernalia, and possession of an instrument of crime. On December 11, 2020, Appellant filed a motion to suppress in which he sought to suppress evidence seized in the search that Officer Frederoski conducted and statements that he made following that search on the grounds that the traffic stop and the direction that Appellant exit the vehicle for questioning were constitutionally invalid and that Appellant was not given *Miranda* warnings prior to questioning. A hearing on this suppression motion was held on January 22, 2021.

On February 4, 2021, Appellant filed an amended motion to suppress in which he sought leave to raise as an additional ground for suppression that Officer Frederoski's search was conducted without a warrant and therefore violated Article I, Section 8 of the Pennsylvania Constitution under

*Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), which was decided on December 22, 2020, after Appellant filed his initial suppression motion. The trial court granted Appellant leave to assert this ground for suppression and held a second suppression hearing on March 12, 2021, at which the Commonwealth and Appellant had the opportunity to present further evidence necessary to address this additional issue. Trial Court Order, 2/8/21. Following this second suppression hearing, the trial court denied Appellant's suppression motions. N.T. 3/12/21 Suppression Hearing at 32-37; Trial Court Opinion and Order, 3/17/21. On the issue of whether the warrantless search violated Article I, Section 8 of the Pennsylvania Constitution, the trial court found that the Commonwealth had not shown that the warrantless search of the car and backpack was justified by exigent circumstances, but denied Appellant's motion to suppress on the ground that Appellant had no reasonable expectation of privacy because he was only a passenger in the car, was not the car's owner, and had not shown that he had the owner's permission to be in the car. N.T. 3/12/21 Suppression Hearing at 32-37; Trial Court Opinion and Order, 3/17/21 at 5-10, 16-18 & n.4.[3]

---

[3] Although the trial court also referred to the ground on which it denied the suppression motion as lack of standing, standing, as discussed below at footnote 4 *infra*, is a distinct issue from whether the defendant has a reasonable expectation of privacy and the trial court's ruling here in fact involved whether Appellant showed a reasonable expectation of privacy, rather than standing.

At Appellant's jury trial on January 3 and 4, 2022, drugs, drug paraphernalia, and other items seized in the search, some of which were found in the backpack, were introduced in evidence. N.T. Trial, 1/3/22, at 86-105. On January 4, 2022, the jury convicted Appellant of PWID methamphetamine, possession of an instrument of crime, possession of marijuana, possession of methamphetamine, possession of benzodiazepine, and two counts of possession of drug paraphernalia, and acquitted him of the other three charges. On February 24, 2022, the trial court sentenced Appellant to three to six years' incarceration for the PWID conviction and concurrent terms of incarceration of one to three years for possession of an instrument of crime, six months to one year for each of the drug possession convictions, and three months to one year for each of the possession of drug paraphernalia convictions. This timely appeal followed.

Appellant presents the following single issue for our review:

Did the lower Court err in denying the defendant's suppression motion when it determined that the defendant lacked standing and/or a privacy interest in the contents of a backpack found on the back seat of a vehicle such that he was precluded from raising a Constitutional claim under Commonwealth v. Alexander, 243 A.3d 177 (Pa. 2020)?

Appellant's Brief at 6. Our standard of review on this issue is well-settled:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record.

> Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*) (quoting *Commonwealth v. Bumbarger*, 231 A.3d 10 (Pa. Super. 2020)).

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals and their effects and possessions from unreasonable searches and seizures. *Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018). A search conducted without a warrant is unreasonable and therefore constitutionally impermissible, unless an established exception to the warrant applies. *Id.*; *Commonweath v. Carmenates*, 266 A.3d 1117, 1124 (Pa. Super. 2021) (*en banc*). In *Alexander*, our Supreme Court held that under Article I, Section 8, the fact that an automobile is involved does not automatically exempt a search from the requirement that police obtain a warrant. 243 A.3d at 181, 207-08. A warrantless search of a vehicle and closed containers found therein is therefore unconstitutional under Article I, Section 8, even though the police have probable cause, unless exigent circumstances or another exception to the warrant requirement is shown. *Id.*

A defendant is not entitled to suppress evidence based on violation of the constitutional protections against unreasonable searches and seizures unless the evidence was obtained in violation of his own rights.

*Commonwealth v. Hawkins*, 718 A.2d 265, 268-70 (Pa. 1998); *Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014). A defendant challenging a search or seizure must therefore demonstrate that he had a reasonable expectation of privacy in the area or item that was searched. *Hawkins*, 718 A.2d at 267-70; *Perel*, 107 A.3d at 188; *Commonwealth v. Brown*, 64 A.3d 1101, 1107 (Pa. Super. 2013).[4]

The trial court found that Appellant did not satisfy this requirement because he was only a passenger who did not own the car and did not show that he had the owner's permission to be in the vehicle. Trial Court Opinion and Order, 3/17/21 at 7-10; N.T. 3/12/21 Suppression Hearing at 33-36. Given its finding that Appellant did not show that he had the permission of the car's owner to be in the car, the trial court did not err in holding that Appellant had failed to demonstrate that he had a reasonable expectation of privacy with respect to the car itself. *Brown*, 64 A.3d at 1107 (non-owner driver of truck did not show reasonable expectation of privacy with respect to truck where there was no evidence that he had the owner's permission to use the truck); *Commonwealth v. Powell*, 994 A.2d 1096, 1104-07 (Pa. Super.

---

[4] To prevail on a motion to suppress, a defendant must also have standing to challenge the search or seizure. *Hawkins*, 718 A.2d at 266-67. Standing, however, is not an issue here because Appellant was charged with possession of items found in the search and a defendant charged with a possessory offense automatically has standing to challenge a search that found items that he is alleged to have possessed or a seizure of such items. *Id.* at 267; *Brown*, 64 A.3d at 1107.

2010) (passenger in car who had no connection to car's owner did not have reasonable expectation of privacy with respect to the trunk of the car); *but see Commonwealth v. Caban*, 60 A.3d 120, 126-27 (Pa. Super. 2012) (driver and passenger who had owner's permission to use car had reasonable expectation of privacy with respect to car and its contents), *overruled on other issue by In re L.J.*, 79 A.3d 1073 (Pa. 2013). Appellant does not dispute that the trial court's findings in this regard are supported by the record of the suppression hearing or contend that the trial court erred in holding that he did not have a reasonable expectation in the car itself.

The car, however, was not the only item that was searched. The search also included the opening of and search of a closed backpack that was behind the front passenger seat where Appellant had been sitting and the trial court determined that much of the evidence that Appellant sought to suppress was found in the search of the backpack. N.T. 3/12/21 Suppression Hearing at 17-18; Trial Court Opinion and Order, 3/17/21 at 4. Appellant argues that he showed that he had a reasonable expectation of privacy with respect to the backpack and that the search of the backpack without a warrant violated his rights under Article I, Section 8. We agree.

A search of a closed container, such as a backpack, intrudes on constitutionally protected privacy interests distinct from any privacy interest that the defendant has with respect to the area where the container is found. *Perel*, 107 A.3d at 189-90.

> [T]he obvious function of an opaque zippered bag is to safeguard the privacy of the personal effects contained therein. … An understanding that personal, private effects are commonly stored in purses, backpacks, luggage, and duffel bags can be gleaned from a casual stroll down any sidewalk. The contents of persons' closed containers are obscured from public view and generally are recognized as private.

*Id.* at 190.  A person therefore has a reasonable expectation of privacy with respect to the contents of such a closed container that he owns even if he did not have any expectation of privacy that was violated by the search of the place where it was found.  *Id.* at 189-93 (defendant had reasonable expectation of privacy with respect to his shaving kit and luggage that was violated by search of those closed containers even though the police had the consent of the occupant to search the apartment where the shaving kit and luggage were found).

Evidence introduced at the suppression hearing showed that, unlike his relationship to the car, Appellant was the owner of the backpack.  Not only was it found near where Appellant was sitting, but Appellant stated to the police officers that it and its contents were his.  N.T. 3/12/21 Suppression Hearing at 18; Commonwealth Ex. B (Ward Body Cam Video X81139320); N.T. 1/22/21 Suppression Hearing at 77, 86.  Indeed, the Commonwealth does not dispute that Appellant was the owner of the backpack or argue that he lacked a privacy interest in the backpack.  Instead, it argues on this issue only that Appellant failed to demonstrate that he had a reasonable expectation of privacy in the car.  Appellee's Brief at 4-6.

Because Appellant demonstrated that he had a reasonable expectation of privacy and the search was conducted without a warrant, the Commonwealth was required to show that the search was constitutional under an exception to the warrant requirement. The trial court found that the Commonwealth did not show any exigent circumstances that justified the search of the car or backpack or that any other exception to the warrant requirement applied. N.T. 3/12/21 Suppression Hearing at 34-36; Trial Court Opinion and Order, 3/17/21 at 7, 16-18 & n.4. That determination is supported by the record from the suppression hearings.

To prove exigent circumstances, the Commonwealth must show that there was an urgent need to conduct the search, to prevent harm to the police or others or destruction of evidence, for example, that makes prompt police action imperative. **Commonwealth v. Duke**, 208 A.3d 465, 470 (Pa. Super. 2019); **Commonwealth v. Flowers**, 735 A.2d 115, 119 (Pa. Super. 1999). The testimony of the police officers at the suppression hearing did not show any urgent need to conduct the search that prevented them from first seeking a warrant. To the contrary, the officers testified that the reason that they did not seek a warrant before conducting the search was not that there was a need for an immediate search, but that under the law at the time, prior to **Alexander**, no warrant was necessary and that they would have sought a warrant if they had known that a warrant was required. N.T. 3/12/21 Suppression Hearing at 8, 10-12, 19-20.

The only evidence in the record that the Commonwealth contends showed any urgency was Officer Frederoski's testimony that the location where the car was stopped had "heavy vehicle traffic." N.T. 3/12/21 Suppression Hearing at 20. That testimony was not sufficient to show exigent circumstances for failing to obtain a warrant before searching the car and Appellant's backpack. The undisputed evidence showed that the car was completely off the roadway and not close to passing traffic. Officer Frederoski testified that the place where the car was stopped had a "very wide" berm and the car was parked right up against woods at the edge of the berm farthest from the roadway. N.T. 1/22/21 Suppression Hearing at 19. The body cam videos introduced in evidence at the suppression hearing confirm that the car was well off the roadway and show that while the location of the stop was a two-lane road with some traffic, there was no unusually high volume of vehicles passing by during the traffic stop and search. Commonwealth Ex. C (Frederoski Body Cam Video X81137556); Commonwealth Ex. B (Ward Body Cam Video X81139320). Moreover, Officer Frederoski testified only that the location made it preferable to reduce the length of the traffic stop, both because of passing vehicles and the fact that the stop was keeping "officers tied up," and made it necessary to tow the car after the traffic stop and search were completed rather than leaving the car there unattended, N.T. 3/12/21 Suppression Hearing at 16, 20, not that the location on the side of the road

made it imperative that the search be conducted immediately, before a warrant could be obtained.

The Commonwealth argues that even if Appellant had a reasonable expectation of privacy and the search violated Article I, Section 8, the denial of the suppression motion should be affirmed on the alternative grounds that Appellant waived his right to seek suppression because his initial suppression motion did not raise the issue of failure to obtain a warrant for the search or that suppression was not required under the inevitable discovery doctrine. Neither of these arguments has merit.

The purpose of Pa.R.Crim.P. 581's requirement that the defendant set forth the grounds on which he seeks suppression in his motion is to ensure that the Commonwealth has notice of what evidence it must produce at the suppression hearing to show that the police obtained the evidence legally. *Carmenates*, 266 A.3d at 1126; *Commonwealth v. Carper*, 172 A.3d 613, 619 (Pa. Super. 2017). A defendant's failure to raise a ground for suppression in his initial motion to suppress therefore does not prejudice the Commonwealth and does not waive the defendant's right to seek suppression on that basis if the new ground for suppression is raised in the trial court before a ruling on the motion to suppress and the Commonwealth has the opportunity to introduce evidence addressing that ground for suppression at a hearing after it has notice of the newly asserted ground for suppression.

*Carper*, 172 A.3d at 619-20 & n.8; *Commonwealth v. Stoops*, 723 A.2d 184, 188 (Pa. Super. 1998).

Here, although Appellant did not raise the failure to obtain a warrant in his initial motion to suppress, he did raise the issue in the trial court and the Commonwealth was afforded a full opportunity to introduce evidence on that issue. Appellant sought leave to amend his motion to suppress to raise the failure to obtain a warrant as a ground for suppression before the trial court ruled on his motion to suppress and the trial court granted him leave to assert that additional ground for suppression and held an additional evidentiary hearing to address whether the warrantless search violated Appellant's rights under Article I, Section 8. Therefore, the Commonwealth was not prejudiced by Appellant's failure to raise the issue earlier and the issue was not waived. *Carper*, 172 A.3d at 619-20 & n.8; *Stoops*, 723 A.2d at 188.

The Commonwealth's inevitable discovery claim likewise fails. Under the inevitable discovery doctrine, suppression of evidence from a search that violated Article I, Section 8 is not required where the Commonwealth shows that the evidence would inevitably have been discovered through lawful means without the unconstitutional search or seizure. *Heidelberg*, 267 A.3d at 505; *Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009). The Commonwealth argues that the inevitable discovery doctrine applies because the officers would have obtained a warrant if a warrant had been necessary

under the law at the time and also because the evidence would been discovered independently as a result of the car being towed.

The first of these contentions is not a basis for applying the inevitable discovery doctrine at all. The claim that police would have been able to obtain a warrant, but did not, does not show that the evidence would inevitably have been lawfully discovered through some other means independent of the warrantless search. ***Perel***, 107 A.3d at 194-96. To satisfy the inevitable discovery exception to the exclusionary rule, the Commonwealth must show that the evidence would have been discovered by some independent means, not simply that the police could have lawfully discovered it if they had chosen to act differently. ***Id.***

Rather, the Commonwealth's claim that a warrant could and would have been obtained, if the law at the time had required a warrant, is a claim that the evidence should not be suppressed because the officers acted in good faith. No such good faith exception to the exclusionary rule exists under Article I, Section 8. ***Carper***, 172 A.3d at 618-20; ***Commonwealth v. Frederick***, 124 A.3d 748, 756 (Pa. Super. 2015). ***Commonwealth v. Davis***, 241 A.3d 1160 (Pa. Super. 2020), relied on by the Commonwealth, is not to the contrary. In ***Davis***, the requirements of the inevitable discovery doctrine were satisfied because the police, after the change in law, in fact obtained the same records through a valid search warrant that was not based on the

previously illegally obtained information. *Id.* at 1172-73. Here, no warrant was ever obtained. N.T. 3/12/21 Suppression Hearing at 8.

The Commonwealth's second inevitable discovery claim likewise fails. The requirements of the inevitable discovery doctrine can be satisfied and suppression is not required where the Commonwealth shows that it was necessary to tow the vehicle in which the evidence was found independent of the unconstitutional search and that the evidence in question would have been obtained in a constitutionally permissible inventory search of the vehicle. *Heidelberg*, 267 A.3d at 505-06; *Bailey*, 986 A.2d at 863. At the suppression hearings, the Commonwealth showed that it was necessary to tow the car because the driver could not drive it away, Appellant had no driver's license, and the owner of the car could not be reached. N.T. 1/22/21 Suppression Hearing at 70-71; N.T. 3/12/21 Suppression Hearing at 16-17. It was not shown, however, that the driver's inability to drive the car away was independent of the warrantless search. To the contrary, Officer Frederoski's body cam video shows that he arrested the driver only after conducting the search and that he advised the driver that items found in the search were the reason for her arrest. Commonwealth Ex. C (Frederoski Body Cam Video X81137556).

Moreover, even if the driver had been arrested for DUI independent of the search or had been determined to be unable to drive independent of her arrest, there was no showing that the need to tow the car would have required

the taking of the backpack. Although Appellant could not drive the car away because of his lack of a driver's license, the Commonwealth did not show that Appellant could not have taken the backpack with him if no search had occurred. Appellant was not under arrest when the search occurred and was arrested only after the search and after he made admissions when he saw the evidence that was found in the search. Commonwealth Ex. B (Ward Body Cam Video X81139320); N.T. 1/22/21 Suppression Hearing at 85-86.

Because Appellant showed that he had a reasonable expectation of privacy with respect to the backpack that was searched during the warrantless search of the car and the warrantless search violated his rights under Article I, Section 8 of the Pennsylvania Constitution, the trial court erred in denying his motion to suppress the items found in the backpack. We therefore reverse in part its order denying Appellant's amended motion to suppress. Because items from that search were admitted in evidence at his trial, we vacate Appellant's convictions and judgment of sentence and remand for a new trial at which no evidence derived from the search of the backpack shall be admitted.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/17/2023